**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **SHAWN JOSE OSUNA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-21-CV-00016-DCG-ATB** |
| | § | |
| **DELEK US HOLDINGS INC.,** | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

On this day, the Court considered the status of the above-styled and numbered cause. On March 12, 2021, Plaintiff Shawn Jose Osuna ("Osuna"), proceeding *pro se*, filed his second application to proceed *in forma pauperis* pursuant to 42 U.S.C. § 1983. (ECF No. 11). On March 17, 2021, this Court granted Osuna's application, and his Complaint was thereafter filed. (ECF Nos. 12, 13). In the Order, the Court directed that "[p]rior to ordering service of process on Defendant, the Court [would] engage in judicial screening of [Osuna's] Complaint pursuant to 28 U.S.C. § 1915." (ECF No. 12, p. 2). The Court has now screened Osuna's Complaint and submits this Report and Recommendation.

After due consideration, the Court **RECOMMENDS** that Osuna's Complaint should be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915(e)(2)(B), for being frivolous and for failure to state a claim.

## I.   BACKGROUND

### a.   Procedural Background

Osuna filed his initial Application to Proceed in District Court Without Prepaying Fees or Costs ("First IFP Application") on January 26, 2021. (ECF No. 1). Due to deficiencies in the First

IFP Application, the Court found that it required additional information from Osuna in order to determine how the case should proceed and ordered Osuna to complete a Civil Complaint Form and Questionnaire.   (ECF No. 2).   Thereafter, however, Osuna returned an uncompleted Questionnaire by failing to provide any answer to the relevant questions regarding Osuna's First IFP Application, leaving the answer space to the relevant questions blank.  (ECF No. 7, p. 6). Therefore, the Court found that Osuna's returned Questionnaire was unresponsive and denied Osuna's First IFP Application.  (ECF No. 8, p. 2).  Accordingly, the Court ordered Osuna to submit the filing fee of $402 or a fully completed application to proceed *in forma pauperis* by April 2, 2021.  (*Id.*).

On March 12, 2021, Osuna filed his Second IFP Application.   (ECF No. 11).   After reviewing Osuna's Second IFP Application, the Court granted Osuna's Second Application to Proceed in District Court Without Prepaying Fees or Costs (ECF No. 11), ordered "the District Clerk to file [Osuna's] Civil Complaint Form and Questionnaire" as Osuna's Complaint (ECF No. 13), and ordered "that service of process shall not issue until the Court determines whether [Osuna's] Complaint should be dismissed pursuant to 28 U.S.C. § 1915."  (ECF No. 12, p. 2).

### b.    Factual Background[1]

Osuna identifies Delek US Holdings Inc. ("Delek") as the named defendant in his Complaint.  (ECF No. 13, p. 1-3).  However, Osuna's claims arise solely from an interaction between Osuna and an unnamed gas station clerk ("Store Clerk") at an "Alon gas station (7-11) on Hercules & Dyer."[2]  (ECF No. 13).  When asked twice on the Questionnaire "how Delek US

---

[1] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.
[2] Osuna's only identifications of the Store Clerk were "light skinned African male store clerk" and "African male store clerk."  (ECF No. 13, p. 8).

Holdings was involved in the acts, omissions, or events," relating to Osuna's claims, Osuna asserts that "[Delek] are the owners" and "owner." (*Id.* at p. 7-8).

Regarding the factual allegations underlying his claims, Osuna alleges that "[t]he defendant lied about the gas money caus[ing] a[n] altercation while working at [an A]lon gas station." (*Id.* at p. 4). Specifically, Osuna asserts that on November 13, 2020, he "bought gas[,] accidently [d]rove without pumping [his] gas[, and] came back" and confronted the Store Clerk. (*Id.* at p. 7). Osuna alleges that the Store Clerk "told [Osuna] someone took it and left," which Osuna asserts was a lie "[because] nobody came . . . ." (*Id.*). Subsequently, Osuna and the Store Clerk "got into a[n] argument in which a [fight] broke out [so] police came," and "[Osuna] was later arrested." (*Id.*). Osuna asserts that the altercation was instigated by the Store Clerk "lying to steal gas money and assault[]." (*Id.* at p. 8). As a result, Osuna alleges injuries of "mental depression and emotional distress plus assault." (*Id.* at p. 4). Specifically, Osuna seeks $100,000 in non-economic damages, and $200,000 in exemplary damages for "mental depression, head injuries[, and] emotional depression." (*Id.* at p. 4, 7-8).

## II.   LEGAL STANDARDS

Title 28 U.S.C. § 1915 directs a court to dismiss an *in forma pauperis* complaint at any time if it determines that the complaint is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Further, the court may *sua sponte* dismiss on these grounds even without serving the defendants. *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) ("Dismissal [under § 1915] is 'often made *sua sponte* prior to the issuance of process, so as to

spare the prospective defendants the inconvenience and expense of answering such complaints.'")
(quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).[3]

"[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact."
*Neitzke*, 490 U.S. at 325.  "A complaint lacks an arguable basis in law if it is based on an
indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest
which clearly does not exist."  *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Harper
v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999)).  A claim is factually frivolous if "the facts are
clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and
'delusional.'"  *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (quoting *Denton v. Hernandez*, 504
U.S. 25, 32–33 (1992)).

To determine whether an *in forma pauperis* complaint fails to state a claim on which relief
may be granted, courts engage in the same analysis as when ruling on a motion to dismiss under
Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Hale v. King*, 642 F.3d 492, 497-99
(5th Cir. 2011) (per curiam).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint
when a defendant shows that the plaintiff has failed to state a claim upon which relief can be
granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual
matter contained in the complaint must allege actual facts, not legal conclusions masquerading as
facts.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a

---

[3] *See also Jones v. Smith*, 234 F. App'x 249, 250 (5th Cir. 2007) (per curiam) (stating that service on defendants is not required before dismissing an action for failure to state a claim) (citing *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that 28 U.S.C. § 1915A, like § 1915(e)(2), "clearly does not require that process be served or that plaintiff be provided an opportunity to respond before dismissal")).

motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted).  A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  The complaint "'does not need detailed factual allegations' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

## III.   ANALYSIS

Osuna alleges that "he bought gas [then] accidently drove without pumping [his] gas [and thereafter] came back and the [Store Clerk] told [Osuna] someone took it and left," which Osuna believes was a lie because "nobody came . . . ."  (ECF No. 13, p. 7).  Subsequently, Osuna asserts that "[the Store Clerk and Osuna] got into a[n] argument in which a fight broke out and police came [such that Osuna] was later arrested."  (*Id.*).

It appears to the Court that Osuna presents two claims in his Complaint: (1) a claim that the Store Clerk stole his gas money ("Conversion Claim") (*Id.* at p. 7); and (2) a claim that the Store Clerk "assaulted" Osuna and started a fight ("Assault Claim") (*Id.* at p. 8).

When asked twice on the Questionnaire "how Delek US Holdings was involved in the acts, omissions, or events," relating to his two claims, Osuna only responds by asserting "[t]hey are the owners" and "owner." (*Id.* at p. 7-8). Therefore, the Court finds that Osuna is only suing Delek in its capacity as the owner of the Alon gas station under the theory of respondeat superior. In order to sufficiently plead Delek's liability under respondeat superior for either of his claims, Osuna must plead sufficient facts to show that the Store Clerk's tortious actions were within the course and scope of his employment with Delek. *Goodyear Tire and Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) ("[A]n employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired.") (quoting *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)) (alteration in original). Liberally construing Osuna's claims that Delek was the "owner" of the Alon gas station where the Store Clerk worked, the Court finds that Osuna alleges that Delek and the Store Clerk had an employer-employee relationship. Therefore, the issue the Court must resolve is whether Osuna's Conversion Claim and Assault Claim (which the Court will address first) plead tortious actions by the Store Clerk that fall within the course and scope of his employment with Delek such that Delek would be liable for the Store Clerk's tortious acts.

a.   **Delek is Not Liable under Respondeat Superior for the Store Clerk's "Assault"**

For Osuna's Assault Claim, Osuna alleges that the Store Clerk "got into a[n] argument [with Osuna] in which a fight broke out." (*Id.* at p. 7). Specifically, Osuna appears to allege that the Store clerk "assaulte[d]" him. (*Id.* at p. 8).

To establish a claim for civil assault, a plaintiff must prove that:

(1) the defendant acted intentionally or knowingly; (2) causes physical contact with another; and that (3) the defendant knows or should reasonably believe that the other will regard the contact as offensive or provocative.

*Johnson v. Kaufman County, Texas*, No. Civ. A. 3:01-CV-1621-M, 2002 WL 31689696, at \*5 (N.D. Tex. Nov. 22, 2002). Here, Osuna alleges that the Store Clerk was "lying to steal [Osuna's] gas money," that led to an "argument in which a fight broke out and police came." (ECF No. 13, p. 7-8). However, Osuna never asserts who started the fight or how the fight started between Osuna and the Store Clerk. Furthermore, it is not clear from Osuna's Complaint whether the Store Clerk ever intentionally or knowingly made physical contact with Osuna.

Assuming, *arguendo*, that Osuna has pled a prima facia case of civil assault by the Store Clerk, his Complaint must also plead that the Store Clerk's alleged assault was within the course and scope of the Store Clerk's employment with Delek in order for Osuna to be able to recover from Delek. "The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment." *Goodyear Tire*, 236 S.W.3d at 757. Therefore, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.* (quoting *Minyard Food Stores*, 80 S.W.3d at 577).

Courts have held that intentional torts are generally not within the course and scope of an employee's employment. The Supreme Court of Texas held that "[i]t is not ordinarily within the

scope of a[n employee's] authority to commit an assault on a third person . . . . And the cases in which liability has been imposed upon the [employer] for assault by his [employee] are comparatively few.  Usually assault is the expression of personal animosity and is not for the purpose of carrying out the [employer's] business." *Texas & Pac. Ry. v. Hagenloh*, 247 S.W.2d 236, 239 (Tex. 1952).

In *H.T. Cab Co. v. Ginns*, the Texas Court of Appeals held that a cabdriver was acting within the course and scope of his employment when he shot a passenger over an unpaid fee.  280 S.W.2d 360, 361 (Tex. Civ. App. 1955).  The court reasoned that the shooting was within the course and scope of the cabdriver's employment because the cabdriver's actions arose out of collecting a fare.  *Id.* at 365; *but see Dart v. Yellow Cab, Inc.*, 401 S.W.2d 874, 877 (Tex. App. 1966) (where the court found that there was clear evidence of a departure by the cabdriver from his assigned duties because the cabdriver admitted that "[w]ell, you don't collect a fare by beating men up," and "[t]hat wasn't what I hit the man for, on account of the money . . . [instead] I lost my temper, is how come me [sic] to hit that man.").

In contrast, in *Kendall v. Whataburger, Inc.*, the Texas Court of Appeals found that a food service employee was acting outside his scope of employment when he struck a complaining customer with hot grease and a french-fry basket.  759 S.W.2d 751, 753 (Tex. App. 1988), *abrogated on other grounds by Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 369 n.3 (Tex. 2000).  The Texas Court of Appeals found, as a matter of law, that the assault "could not possibly have been so connected with and immediately arising out of [the employee's] job of taking food orders, and preparing and delivering food orders to customers, that his authorized employment tasks and the assault could have merged into one indivisible tort, imputable to the [employer]." *Id.* at 755.

Here, the Court finds that Osuna alleges facts similar to the facts in *Kendall v. Whataburger*.  Unlike *H.T. Cab*, Osuna does not allege that the Store Clerk assaulted him in order to recover for unpaid services.  Instead, Osuna had already paid for his gas and was asking for the return of his unused payment.  *See* (ECF No. 13, p. 7).  Similar to *Kendall v. Whataburger*, Osuna has not pled any facts to suggest that the Store Clerk's alleged assault was not merely an "expression of personal animosity and . . . [that it was instead] for the purpose of carrying out [Delek's] business."  *Texas & Pac. Ry.*, 247 S.W.2d at 239.

Further, Osuna does not allege any facts from which the Court can infer that the Store Clerk's job responsibilities included the discretion to use force against a customer.  *Compare G.T. Management, Inc. v. Gonzalez*, 106 S.W.3d 880, 884 (Tex. App. 2003) (where court found that a club's "bouncers' duties were to break up [] fights and walk [] parties out of the club . . . [, and that t]he bouncers were hired based primarily on their size" were all evidence "that the bouncers were authorized to use force," such that the bouncers' assault of plaintiff "was incidental to their use of that force"), *with Giesler v. Ruiz Food Products, Inc.*, No. 4:08-cv-344, 2009 WL 3261565, at *6 (E.D. Tex. 2009) (where the court granted summary judgment for an employer defendant where the plaintiff "pointed to nothing in the summary judgment evidence that could support a finding that the [assault by a sanitation department employee] was within the general scope of duties entrusted by [the employer defendant] to [the sanitation department employee].").  Therefore, the Court finds that the Store Clerk's authorized employment tasks did not include any discretion to use force against a customer.

In sum, the Court finds that the Store Clerk's fight with Osuna constitutes a deviation from the Store Clerk's duties such that Delek is not liable for the Store Clerk's alleged tortious actions regarding Osuna's Assault Claim.  Therefore, the Court finds that Osuna's Assault Claim is

frivolous and fails to state a claim on which relief may be granted. Accordingly, the Court recommends that Osuna's Assault Claim be dismissed.

**b.      Osuna's Complaint Does Not Sufficiently Plead the Elements of Conversion**

When asked in his Questionnaire about the "specific acts, omissions, or events that occurred giving rise to your claim" that "the defendant stole gas money," Osuna alleges that he "bought gas[,] accidently [d]rove without pumping [his] gas[, and] came back" and confronted the Store Clerk. (ECF No. 13, p. 7). Further, Osuna alleges that the Store Clerk "told [Osuna] someone took it and left," which Osuna asserts was a lie "[because] nobody came . . . ." (*Id.*).

The Court finds that Osuna is alleging a claim for civil conversion, which is defined as "the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex. App. 2009). To establish a claim for conversion, a plaintiff must prove that:

> (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

*Texas Integrated Conveyor Systems*, 300 S.W.3d at 366.

Here, Osuna asserts that he "bought gas [and] accidently [d]rove without pumping [his] gas." (ECF No. 13, p. 7). Accepting Osuna's allegations as true, the Court construes Osuna's pleading to allege that he was entitled to the return of the money since he had not pumped his gas and timely "came back" to recover the money. Therefore, Osuna pleads that he was entitled to possession of the gas money thereby satisfying the first element of conversion.

10

Further, Osuna pleads that the Store Clerk was "lying" in order to steal his gas money. (*Id.*). The Court finds this allegation satisfies the second element that the Store Clerk unlawfully and without authorization assumed and exercised control over the gas money to the exclusion of Osuna.

Osuna also alleges that after he "came back" to the Alon gas station, the Store Clerk lied and "[t]old [Osuna] someone took it and left" instead of returning the gas money. (ECF No. 13, p. 7). Therefore, the Court finds that Osuna has sufficiently pled that he demanded the return of his gas money to which the Store Clerk refused, thus satisfying the third and fourth elements of conversion.

In addition to the four elements of conversion analyzed above, "[a]ctual damage is an essential element of a conversion claim." *Solares v. Solares*, 232 S.W.3d 873, 883 (Tex. App. 2007) (citing *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997) (per curiam)). "A plaintiff must prove damages before recovery is allowed for conversion." *United Mobile Networks*, 939 S.W.2d at 147; *see also Wells Fargo Bank Northwest, N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 706 (Tex. App. 2012). Furthermore, "[d]amages are limited to the amount necessary to compensate the plaintiff for the actual losses or injuries sustained as a natural and proximate result of the defendant's conversion." *United Mobile Networks*, 939 S.W.2d at 148; *Wells Fargo Bank Northwest*, 360 S.W.3d at 706. Therefore, Osuna must plead damages in his Complaint that compensate him for the actual losses or injuries he sustained as a natural and proximate result of the Store Clerk stealing his gas money.

### 1. *Osuna's Complaint Does Not Plead Any of the Typical Damages for Conversion*

First, the Court reviews Osuna's Complaint to determine if Osuna pleads any of the usual damages for conversion. "The usual measure of damages for conversion is the fair market value

of the property at the time and place of conversion." *Wells Fargo Bank Northwest*, 360 S.W.3d at 706; *United Mobile Networks*, 939 S.W.3d at 147-48. Alternatively, a plaintiff can "seek the return of the property and damages for its loss during the time of its detention." *Wells Fargo Bank Northwest*, 360 S.W.3d at 706.

Here, Osuna makes no claim for such damages. The only property Osuna asserts that the Store Clerk "stole" was his "gas money." (ECF No. 13, p. 4, 7-8). However, Osuna never indicates the value or amount of this gas money. Therefore, the Court is unable to determine the fair market value of the property at the time and place of the alleged conversion. Further, Osuna never pleads that he seeks the return of the gas money or for any lost value "during the time of its detention." In sum, the Court finds that Osuna has not pled any of the usual damages common for claims of conversion.

**2.     *Osuna Fails to Plead Sufficient Facts that Delek is Liable for Exemplary Damages***

Although Osuna does not plead any of the conventional damages for conversion, Osuna does allege two alternative forms of damages. First, Osuna seeks "$200,000 in exemplary [d]amages." (ECF No. 13, p. 4).

Under Texas state law, an employer will be liable for exemplary damages due to the tortious acts of its employees "only if: (a) the [employer] authorized the doing and the manner of the act, or (b) the [employee] was unfit and the [employer] was reckless in employing him, or (c) the [employee] was employed in a managerial capacity and was acting in the scope of employment, or (d) the employer or a manager of the employer ratified or approved the act." *Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 152 (5th Cir. 2017) (quoting *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967)).

First, Osuna pleads no facts to suggest that Delek authorized the Store Clerk to steal gas money from any of the gas station's customers. Also, Osuna neither asserts facts that the Store Clerk was unfit for his job nor that Delek was reckless in employing him. Furthermore, Osuna alleges that the employee who allegedly stole his gas money was the Store Clerk, not a manager or an employee with managerial capacity. Finally, Osuna makes no claim in his Complaint that Delek or a manager ever ratified or approved of the Store Clerk's actions. Accordingly, the Court finds that Osuna fails to plead any facts to support his assertion that Delek is liable for exemplary damages.

Instead, Osuna pleads injuries of "mental depression, head injuries[, and] emotional depression." (*Id.* at p. 7-8). Therefore, the Court finds that Osuna is pleading mental anguish damages.

"Mental anguish is a type of damage and is not an independent cause of action." *Ogunbanjo v. Don McGill of West Houston, Ltd.*, No. 01-13-00406-CV, 2014 WL 298037, at *4 (Tex. App. Jan. 28, 2014). Therefore, Osuna can only recover mental anguish damages in connection with a defendant's breach of some other legal duty. *See id.* (citing *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993)). Here, the Court finds that Osuna's mental anguish damages are connected to his Conversion Claim.[4]

The Texas Supreme Court has held that mental anguish damages are "available where the plaintiff establishes 'intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties . . . [and in] a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result.'" *SCI*

---

[4] To the extent Osuna is asserting that the mental anguish damages derive from the altercation with the Store Clerk and the Store Clerk's "assault" of Osuna, Osuna is precluded from recovering these damages from Delek for the reasons stated above, specifically, that Delek is not responsible for the actions of their employees outside the scope of their employment.

13

*Texas Funeral Services, Inc. v. Nelson*, 540 S.W.3d 539, 544 (Tex. 2018) (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997)) (internal alterations in original).  Here, Osuna does not allege a serious bodily injury, a special relationship between himself and Delek or the Store Clerk, or an injury of such a shocking and disturbing nature that mental anguish is a highly foreseeable result.  However, liberally construing Osuna's Complaint with every inference in his favor, it appears to the Court that Osuna is asserting that the Store Clerk was acting intentionally and with malice through his allegation that the Store Clerk was "lying to steal gas money."  (ECF No. 13, p. 8).

Assuming, *arguendo*, that Osuna has sufficiently pled malice, the mental anguish damages for his Conversion Claim are only recoverable within his pleaded exemplary damages.  Traditionally, Texas state courts "refused to include [mental anguish] damages as an element of actual damages because conversion does not involve physical injury."  *First Nat. Bank Missouri City v. Gittelman*, 788 S.W.2d 165, 169 (Tex. App. 1990).  However, more recently, the Texas Court of Appeals "noted . . . that if malice were involved and exemplary damages thus recoverable, the jury could consider 'distress of mind' in assessing those damages."  *Id.* (quoting *White Sewing Mach. Co. v. Lindsay*, 14 S.W.2d 311, 312 (Tex. Civ. App. 1929)).  Therefore, "[c]ourts in more recent cases have . . . [allowed] juries to consider mental anguish, among other factors, in fixing the amount of exemplary damages."  *Id.*  Therefore, any claim to mental anguish damages by Osuna are considered under his pleading for $200,000 in exemplary damages.  *Id.* ("Mental anguish will instead be reviewed under . . . the exemplary damage award.").  As discussed above, however, Delek is not liable for any exemplary damages, and consequently, is not liable for mental anguish damages for Osuna's Conversion Claim.  *See Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 152 (5th Cir. 2017) (where the Fifth Circuit held that an employer is only

liable for exemplary damages if the employer authorized the tortious act, the employer was reckless in employing an unfit employee, the employee was a manager, or the employer or manager approved of the tortious act).

In sum, the Court finds that Osuna has failed to plead sufficient facts relating to his Conversion Claim in order for Delek, the employer of the Store Clerk, to be liable for exemplary damages, including any mental anguish damages, under Texas state law.  Therefore, the Court finds that Delek is not liable for any of the $200,000 in exemplary damages that Osuna pled in his Complaint.

### 3.    *Osuna's Petition for $100,000 in Noneconomic Damages is Factually Frivolous*

The second form of damages Osuna seeks in his Complaint is "$100,000 in [n]on[]economic [d]amages."  (ECF No. 13, p. 4).  Absent Osuna's pleaded mental anguish damages discussed above, the only other ascertainable damages from the Store Clerk's alleged conversion is the fair market value of the gas money.  *Wells Fargo Bank Northwest*, 360 S.W.3d at 706 ("The usual measure of damages for conversion is the fair market value of the property at the time and place of conversion").   Therefore, the Court finds that Osuna is pleading that the $100,000 in noneconomic damages are to compensate for Osuna's lost gas money.

To the extent Osuna is pleading that the amount of gas money the Store Clerk stole was $100,000, the Court finds this claim to be factually frivolous.  A claim is factually frivolous if the facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"  *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).  Here, the Court finds a claim that $100,000 is the fair market value of Osuna's gas money to be fanciful, fantastic, and delusional.  Accordingly, the Court finds that Osuna's petition for $100,000 in noneconomic damages relating to his Conversion Claim to be

factually frivolous and therefore, Delek is not liable for any of the $100,000 in noneconomic damages.

    *4.*    *Conclusion*

In sum, the Court finds that Osuna has failed to plead any recoverable damages to his Conversion Claim.  Therefore, the Court finds that Osuna's Conversion Claim is frivolous and fails to state a claim on which relief may be granted.  Accordingly, the Court recommends that Osuna's Conversion Claim be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Delek is not liable for the Store Clerk's alleged tortious actions regarding Osuna's Assault Claim since the fight with Osuna constitutes a deviation from the Store Clerk's duties.  Furthermore, the Court finds that Osuna has failed to plead any recoverable damages for his Conversion Claim.

Accordingly, the Court **RECOMMENDS** that Plaintiff's Complaint be **DISMISSED** for being frivolous and for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B).

**SIGNED** and **ENTERED** this 13th day of April, 2021.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE</u>

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**